IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division



RHONDA JOHNSON AND VENITA )
WASHINGTON, )
 )
 Plaintiffs, )
 )
v. ) Civil Action No. 1:13-cv-00113
 )
UNITED AIRLINES, INC., )
 )
 Defendant. )
 )

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant United Airlines' ("United" or "Defendant") Motion for Summary Judgment. Defendant is an airline company, and Plaintiffs Rhonda Johnson ("Johnson") and Venita Washington ("Washington") (collectively "Plaintiffs") are currently employed by Defendant. Plaintiffs allege that they were subjected to discrimination and harassment on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e and 42 U.S.C. § 1981 ("Section 1981"). Plaintiffs allege that United took insufficient action to investigate their complaints. Plaintiff Washington also alleges that she was retaliated against in violation of 42 U.S.C. § 2000e.

Washington began working as a United flight attendant in 1986, she is currently based out of the Washington Dulles

1

International Airport ("Dulles"), in Virginia. Johnson began working as a United flight attendant in 1989, and from 2002 to early 2013 she was based out of Dulles. The terms and conditions of Johnson and Washington's employment are governed by a Collective Bargaining Agreement entered into between the Association of Flight Attendants and United's policies. United provides its employees a copy of the Working Together Guidelines, which sets forth United's policies regarding discrimination, retaliation and harassment. These policies were primarily available on United's intranet (known as "Skynet") prior to 2011. The policies are also posted throughout the United base at Dulles. If an employee is subjected to discrimination, harassment or retaliation, employees are directed to contact: (1) their supervisor or any member of management; (2) Human Resources; (3) the Ethics and Compliance Hotline (where the employee may leave an anonymous message) or (4) United's Employee Service Center hotline (where the complaint would be escalated to United's Human Resources Department).

Plaintiffs claim that in or around 2008 rumors began circulating about a prostitution ring involving female African-American United flight attendants. The prostitution activity was purportedly occurring during United flight layovers in Kuwait. Plaintiffs were both flight attendants working on

2

United flights to Kuwait around the time of the alleged rumors. Washington contends that in 2008 she heard more than twenty comments from unidentified passengers, coworkers and pilots about the prostitution ring in general. Washington claims that an unidentified female co-worker asked if Washington was "looking for her hooker pumps". Washington admits that no one directly accused her of participating in the prostitution ring. Nevertheless, Washington claims that throughout 2010, 2011 and 2012, she felt that co-workers and passengers were "insinuating that [she] was part of [the prostitution ring]" or otherwise had knowledge of it. Johnson was also questioned about the rumors. Johnson alleges that an unidentified individual commented, "surely you know all about the prostitution ring because you do [the Kuwait trip] all the time and it's your sister girls running it." Neither Plaintiff is able to name specific individuals who made insinuations regarding the prostitution ring.

Washington is directly supervised by Sandra Sales ("Sales") at Dulles. From 2008 to 2013 Johnson had a few direct supervisors, including Alex Barretto during 2012 and 2013. Washington and Johnson claim that in 2008 or 2009, they asked their union representative if he was aware of the rumors, but they did not formally grieve the matter with their union. In 2009, Washington spoke with her supervisor, Sales, about the

rumors, but she never asked her to take any action. Washington also complained to Denise Robinson-Palmer, a United manager. No specific names were provided by Plaintiffs.

In or about October 2011, Plaintiffs heard from other co-workers that a document purporting to be a hunting license (the "Hunting License") containing racial slurs was placed into their co-workers' company mailboxes. Neither Plaintiff received a copy of the Hunting License. In fact, Johnson was on medical leave at the time of the alleged distribution of the Hunting License. In late 2011, Plaintiffs heard about a bulletin board posting (the "Posting") seeking a roommate, the Posting contained racial epithets. Neither Plaintiff personally saw the Posting. The Posting, which was placed on an employee bulletin board twice in 2010, was immediately removed by Robinson-Palmer. United looked into the matter in an effort to find out where the Posting came from. United continues to monitor the board to prevent similar postings, and no further inappropriate postings have occurred.

In November 2011, Washington contacted Alice Zauner ("Zauner") regarding the prostitution ring rumors, the Hunting License, the Posting, and an issue with a coworker. Washington informed Zauner that coworker Alassane Konate ("Konate"), also referred to as Allisant Konanta, was spreading rumors about her and had told another coworker that Washington "did not like

white people". Konate is also African-American. Washington did not provide any names of individuals in connection with her complaint regarding the prostitution ring rumors, the Hunting License or the Posting.

Johnson also claims to have raised concerns about the rumors to her supervisor and union representative. Until Johnson's April 3, 2013, deposition, where she named fellow flight attendant "Pierre" by first name only, she could not name a single person who had asked her about the prostitution rumors.

Prior to November 2011, Plaintiffs were informed that United investigated the prostitution ring rumors but nothing factual was ever found. Mary-Kay Panos ("Panos"), United's Director of Inflight at the Dulles base, began investigating the prostitution rumors in 2009 and was able to identify the hotel where the alleged activities were occurring but could not discover who was involved and if the rumors were true. Panos directed a supervisor to contact the Kuwait United base and the hotel where the prostitution activity was allegedly occurring, the supervisor came back with information that neither had concerns regarding United employees.

Additionally, after Washington raised concerns regarding the prostitution ring rumors, the Hunting License, the Posting, and the issue with United employee Konate, in 2011, Zauner contacted Washington to discuss these issues and escalated

5

Washington's concern to United's Harassment and Discrimination Team as well as Washington's Human Resources Manager, George Bellomusto ("Bellomusto"). Soon after, United's Human Resources Department began investigation into these matters. Bellomusto also met with Washington and Washington's union representative. Washington refused to identify her harassers, claiming that she did not want to experience repercussions from her coworkers. United also investigated the Hunting License by fingerprinting employees and conducting interviews, despite these efforts the individual responsible was not identified. With respect to the Posting, Robinson-Palmer called the company identified as advertising for roommates on the Posting and the company confirmed that they did not have anything to do with the Posting. Regarding United employee Konate, after consultation with Konate's manager and an investigation, Bellomusto determined that Konate's conduct was in violation of United's policies and Konate was disciplined. As a result of the investigation, written reports were prepared, Konate was disciplined, and video surveillance was installed near the employee mailboxes.

On February 24, 2012, Plaintiff Washington filed an EEOC Discrimination Complaint against United and received her EEOC Notice of Right to Sue on April 27, 2012. On March 12, 2012 Plaintiff Johnson filed an EEOC Discrimination Complaint against

United and received her EEOC Notice of Right to Sue on June 29, 2012. On July 24, 2012 Plaintiffs filed a Complaint alleging race discrimination/ hostile work environment, sex/gender discrimination, retaliation and harassment. Count III, alleging sex/gender discrimination, was later dismissed and Count IV alleging retaliation was dismissed as to Plaintiff Johnson but remains as to Plaintiff Washington. The case was transferred to this District on January 28, 2013. Defendants filed their motion for Summary Judgment as to Plaintiffs' remaining claims on July 3, 2013.

The Court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "The burden of the moving party . . . may be discharged by simply pointing out 'that there is an absence of evidence to support the nonmoving party's case.'" Carr v. Deeds, 453 F.3d 593, 608 (4th Cir. 2006), citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

The Court construes all reasonable inferences in favor of the non-moving party when determining whether there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The mere existence of some disputed facts does not merit a trial unless the disputed facts are material to an issue necessary for proper resolution of the case and the

quality and quantity of the evidence offered to support a question of fact are adequate to support a jury verdict. Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). If the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the Court will grant summary judgment "to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp., 477 U.S. at 324-25); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) (citing Felty, 818 F.2d at 1128).

Plaintiffs allege that they were subjected to a hostile work environment in violation of Section 1981 and Title VII. To state a hostile work environment claim, Plaintiffs must allege that the harassment was based on race and that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. See Chao v. Rivendell Woods, Inc., 415 F.3d 342, 347 (4th Cir. 2005). In other words, in order to demonstrate that they were subjected to a hostile work environment, Plaintiffs must present evidence

8

that: "(1) [they] experienced unwelcome harassment; (2) the harassment was based on [their] . . . race . . . ; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003); Spicer v. Com. of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995). To evaluate the objective severity of the purported harassment, courts must consider: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the employee's job performance. Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003).

Comments or conduct of which Plaintiffs had no direct knowledge cannot be said to have made their work environment hostile. Belton v. City of Charlotte, 175 Fed. Appx. 641, 656 (4th Cir. 2006) (court would not consider discriminatory comments heard by other co-workers in a race-based hostile work environment case since the racially hostile remarks were not said in Plaintiff's presence and therefore constituted hearsay); see also White v. Federal Express Corp., 939 F.2d 157, 161 (4th Cir. 1991) (court rejected the plaintiff's race-based hostile

9

work environment claim where it rested on a racially offensive exchange not directed at plaintiff). The environment must be both subjectively and objectively offensive to be actionable under Title VII. Belton, 175 Fed. Appx. at 656 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

Neither Plaintiff received the Hunting License or the Posting, or viewed it personally. While the Plaintiffs were aware of the Hunting License distribution and the Posting on the bulletin board, those were isolated incidents and no United employee was identified as responsible. United has taken reasonable precautions to assure that no similar incidents will occur, and no other issues have arisen. Plaintiffs argue that United's investigations were insufficient, however the law does not mandate the specific actions to take in response to anonymous harassment. EEOC v. Central Wholesalers, Inc., 573 F.3d 167, 178 (4th Cir. 2009) (holding that there is no "exhaustive list" or "particular combination" of remedial measures or steps that an employer need employ to insulate itself from liability). United's prompt investigation into the matters resulted in remedial action in the form of removing the offensive material immediately, working with police officers, monitoring the bulletin board and installing security cameras. Due to the fact that no employee was identified in connection

with either incident, United could not take specific action with respect to individual employees. United took practical measures in response to each complaint and their investigations were timely, thorough, and ultimately caused the offending postings and distribution materials to cease.

Additionally, the prostitution ring rumors, and questions/ insinuations in connection with the rumors, do not amount to an abusive work environment. Plaintiffs admit they were not directly accused of participating in the prostitution ring. While questioning or insinuations relating to the prostitution ring may have been uncomfortable or subjectively offensive, this conduct alone by unidentified United employees does not qualify as severe and pervasive. A statement "which engenders offensive feelings in an employee" does not satisfy the element. Harris, 510 U.S. at 21. Further, the fact that both Plaintiffs continued as United flight attendants, and remain United employees today, demonstrates the lack of significant interference with work performance. Plaintiffs have failed to submit evidence of discriminatory conduct that is adequately severe or pervasive to sustain a claim for a hostile work environment.

Further, United has discrimination and harassment prevention policies in place that are disseminated to employees through the Working Together Guidelines, Skynet and through on-

site postings. Washington followed procedure in filing a complaint with her supervisor and union representative, but failed to identify specific individuals responsible for harassment, thereby leaving United little opportunity to mitigate the issues. Plaintiff Johnson also failed to identify anyone by name, aside from "Pierre" in her deposition, well after United's investigations into the matter. Nonetheless, United took measures to inquire into and solve the issues raised by Plaintiffs. Initially, upon hearing of the prostitution ring rumors and later upon receiving Washington's complaints, United took immediate action and investigated each individual matter thoroughly. After investigation, United took action to mitigate the issues. However, the prostitution ring rumors were relatively unresolvable particularly considering the lack of identified individuals and denial of a problem by those in Kuwait and at the alleged hotel site. Plaintiffs have failed to demonstrate a basis for imposing liability on United.

Washington also alleges that United retaliated against her after she complained. United has a points system associated with attendance. If a flight attendant fails to board a scheduled flight or submit to mandatory training they will accumulate points. This system is set up pursuant to a Letter of Agreement and a Dispute Resolution, Attendance and

Performance Management Agreement between United and its flight attendants.

If the absence is due to illness then the flight attendant has the opportunity to provide documentation from a physician on or before their next scheduled flight in order to decrease their point total by one half of a point. By August 2011, Washington had accumulated five points for failure to fly on two occasions. On October 30, 2011 Washington again failed to board a scheduled flight, due to illness, and provided physician documentation. Washington's October 30, 2011 2 point addition was reduced to 1.5 points. At that time, Washington had a total of 6.5 points and was therefore sent an Attendance Letter of Warning signed by Washington's supervisor, Sandra Sales.

Washington later claimed that her October 30, 2011 missed flight was due to an occupational illness, but failed to submit any documentation to support this until much later. Gallagher Bassett, United's third party administrator, evaluates occupational claims submitted by United employees and determines whether or not an occupational injury claimed is approved. United does not evaluate claims or make the determination that a claim is approved. Panos attempted to reach out to Washington to evaluate the matter, but Washington did not pursue the matter further. In November 2012, Washington returned to work from a medical leave of absence. At that time Washington was required

to complete a mandatory annual re-qualification training for flight attendants. Washington did not attend the January 3, 2013 mandatory training due to a friend's funeral; therefore, she accumulated 2 points pursuant to the Letter of Agreement.

In order to establish a prima facie case of retaliation, Plaintiff must prove three elements: (1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that there was a causal link between the two events. Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008). If a prima facie case is established, the employer may then rebut the case by showing that there are legitimate non-discriminatory reasons for the adverse actions taken. Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006). If this burden is met, Plaintiff must then show that the "proffered reasons are pretextual or his claim will fail." Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004).

Washington's failure to board an October 30, 2011 United flight, which caused her to accumulate 1.5 points, came before her November 2011 complaints and February 2012 EEOC charge. Washington, therefore, cannot demonstrate that this was adverse employment action or that there is any remote causal link between the two events. Washington argues that her Attendance Letter of Warning was issued after her complaints and was in retaliation for her complaints. However, the Attendance Letter

of Warning was dispatched due to her accumulation of more than 6 points. Washington also attempts to establish pretext in connection with the issuance of the Attendance Letter of Warning and comments made by a supervisor regarding her "special circumstances". Temporal proximity, standing alone, is generally insufficient to establish a jury question regarding pretext. See Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1983). Washington has not demonstrated that United's legitimate non-discriminatory reasons for the adverse actions were in fact pretextual.

Further, Washington's failure to report for mandatory training in January 2013 generated attendance points which she argues are punishment. The accumulation of points occurred long after her November 2011 complaints and EEOC complaint. Washington cannot make out a causal connection. Washington also alleges that a United employee informed her that her points would not be removed due to her "special circumstances". This statement alone is not evidence of retaliation; Washington's "special circumstances" could mean any number of things.

Washington primarily relies on her subjective belief that United issued the Attendance Warning Letter in retaliation for her complaints in order to support her retaliation claim. Washington has not demonstrated that her complaints constituted a but-for cause of the points she earned or the resulting

Attendance Letter of Warning. See e.g. <u>University of Texas Southwestern Medical Center v. Nassar</u>, 570 U.S. __ (2013) (holding that Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in §2000e-2(m), thus requiring proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.) Washington's retaliation claim fails as a matter of law. For the aforementioned reasons, Defendants' Motion for Summary Judgment should be granted.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
August 2, 2013